2 A.3d 360

**Hugh Shaka MARSHALL**

v.

**STATE of Maryland.**

**No. 127, Sept. Term, 2009.**

Court of Appeals of Maryland.

Aug. 23, 2010.

400

Brian M. Saccenti, Asst. Public Defender (Paul B. DeWolfe, Public Defender, of Baltimore, MD), on brief, for Petitioner.

Jeremy M. McCoy, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, of Baltimore, MD), on brief, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

HARRELL, J.

> *Our house is a very, very, very fine house,*
> *With two [cops] in the yard;*
> *Life used to be so hard,*
> *Now everything is [seized] 'cause of you.*[1]

In the present case, we consider whether the Circuit Court for Prince George's County suppressed erroneously evidence seized, pursuant to an assumptively improper search warrant issued by a judge of that Court, from the residence of the Petitioner, Hugh Shaka Marshall. Assuming the search warrant in this case as to the residence was issued improperly, and contrary to the conclusion reached by the Circuit Court,

---

[1] My apologies to Crosby, Stills, Nash & Young for tinkering with the lyrics of this stanza of their song, "Our House," from their 1970 album, *Deja Vu.*

the evidence recovered from the residence may be admissible nevertheless under the good faith exception to the Fourth Amendment's exclusionary rule.

## I. FACTS

On 12 June 2008, in connection with his investigation of a person, later identified as Marshall, for suspected drug and related offenses, Detective Aiken of the Prince George's County Police Department's Narcotic Enforcement Division submitted to a judge of the Circuit Court an application for a search warrant. In the application, Detective Aiken sought authorization to search a residence, located at 3500 Jeff Road in Upper Marlboro, Maryland, and a white 2005 Cadillac sedan displaying Maryland license plates 6BXM71.[2] In conjunction with the warrant application, Detective Aiken filed an affidavit regarding his investigation.

In his affidavit, Detective Aiken stated that he was contacted in April 2008 by a confidential informant[3] who reported that "a black male known as 'Shaka' ... was involved in the illegal distribution of controlled dangerous substances, especially Marijuana, from his vehicle, a White 2005 Cadillac sedan displaying Maryland registration plates 6BXM71[,] in various locations located in Upper Marlboro." The informant reported also that "Shaka" used his vehicle to store and sell his supplies of drugs.

As a result of this information, Detective Aiken arranged for the confidential informant to engage in a controlled drug buy

---

2. The warrant issued by the judge reads "[y]ou shall conduct a search of the motor vehicle," but proceeds to describe only the residence. In the Circuit Court, Marshall argued that this error rendered facially invalid the entire warrant. The Court, noting *Giles v. State,* 10 Md.App. 593, 597, 271 A.2d 766, 768 (1970), held that the warrant issued in this case incorporated Detective Aiken's affidavit and its clear description of the vehicle as well as the residence and, accordingly, rejected the contention. Marshall did not challenge this aspect of the Court's decision in his appeal.

3. According to the affidavit, the confidential informant had proven reliable in previous dealings with the Detective.

from "Shaka" on 25 April 2008. Detective Aiken took the informant to "a predetermined location in Upper Marlboro" with instructions to purchase a quantity of marijuana from "Shaka" with money provided to the informant by police. After setting up surveillance of the anticipated area of the controlled buy, Detective Aiken observed the informant meet a black man driving the white Cadillac described by the informant in his initial report. The driver of the white Cadillac exited the car, "conducted a hand to hand transaction" with the informant, retrieved a small plastic bag filled with a leafy substance from inside the car, and gave the bag to the informant. After receiving the bag, the informant left the area of the transaction "without coming in contact with any other individual" and returned to Detective Aiken, whereupon the informant informed Detective Aiken that the driver of the white Cadillac was "Shaka" and gave the Detective the plastic bag containing the leafy substance. A field test conducted that day confirmed that the substance in the bag was marijuana.

Following the controlled buy, Aiken joined Prince George's County Detective McCreary to assist with McCreary's ongoing surveillance of "Shaka" and the white Cadillac. After observing several short meetings between "Shaka" and other individuals, the detectives followed the white Cadillac as "Shaka" drove it away from the scene of the controlled buy directly to the residence located at 3500 Jeff Road. At the residence, the detectives observed "Shaka" park the car in the driveway. At this point, the police left the area for the evening. When Aiken returned to the residence the following morning, the white Cadillac remained parked in the driveway. Detective Aiken conducted an electronic search of the Maryland Motor Vehicle Administration Database, which indicated that the registered owner of the white Cadillac was Ginette Minerva Smith, whose address was listed in the database as 3500 Jeff Road. In addition, the database search revealed that Hugh Shaka Marshall lived at the same address.

The police continued their surveillance of 3500 Jeff Road into May 2008, but were able to confirm only that the white

Cadillac was parked often in the driveway there. In order to complete his investigation, Detective Aiken arranged for the informant to carry out another controlled buy from "Shaka," now identified as Hugh Shaka Marshall, on or about 20 May 2008. As in the first transaction, Marshall sold the informant a bag containing a substance which later tested positive for marijuana. During the time surrounding the second controlled buy, Aiken observed Marshall driving the white Cadillac "multiple times in various location with in [sic] the Upper Marlboro area."

Based on the above-stated information, Detective Aiken filed a search warrant application and affidavit with a judge of the Circuit Court, seeking authorization to search the white Cadillac and the residence located at 3500 Jeff Road. In addition to describing his first-hand observations of Marshall's activity, the Detective's affidavit emphasized his experience and training in narcotics investigations and his resulting familiarity "with the actions, traits, habits, and terminology utilized by individuals involved in the drug culture." In part, he attempted to justify the request to search the residence with conclusions drawn from this asserted familiarity, stating:

7) That it is common for drug dealers to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residences and/or their businesses. . . .

8) That persons involved in drug trafficking conceal in their residences and businesses caches of drugs, large amounts of currency, financial instructions, precious metals, jewelry, and other items of financial transactions relating to ... narcotics trafficking activities.

\*　　\*　　\*

15) That based on training and experience, your affiants [sic] [4] know that drug traffickers commonly have in their

---

4. Here and throughout the section entitled "Justification for the Place to be Searched and Items to be Seized," the affidavit refers to "affiants," although plainly there was only one affiant filing the application,

possession, that is on their person, at their residence and/or their businesses, firearms. . . .

Upon review of Detective Aiken's application and affidavit, the judge issued, on 12 June 2008, the requested search warrant. The following day, the police executed the warrant, recovering drugs and related paraphernalia from the residence. Although he attempted to drive away from the scene in another vehicle, Marshall was arrested. During a search conducted incident to Marshall's arrest, police discovered two handguns[5] and additional drugs in the vehicle and on Marshall's person.

## II. PROCEDURAL HISTORY

On 16 September 2008, Marshall was charged in the Circuit Court with two counts of possession of controlled dangerous substances ("CDS"); two counts of possession of CDS with intent to distribute; two counts of possession of CDS with intent to distribute within 1,000 feet of a school; two counts of wearing and carrying a handgun; two counts of transporting a handgun; one count of possession of drug paraphernalia; and one count of obliterating the identification number on a firearm. Marshall filed a motion to suppress the evidence seized during the execution of the search warrant. In his motion, he claimed, *inter alia*, that (1) there was no substantial basis for the judge issuing the search warrant to find probable cause to approve the search of the residence, and (2) the good faith exception to the Fourth Amendment's exclusionary rule, announced in *United States v. Leon*, 468 U.S. 897, 922, 104 S.Ct. 3405, 3420, 82 L.Ed.2d 677, 698 (1984), did not save the seizure.

---

Detective Aiken. As Marshall suggests, the consistency of this mistake and the generality of the conclusions in this section of the affidavit indicate that the language is boilerplate, cut and pasted electronically into many warrant applications prepared on a computer.

**5.** In its opinion in Marshall's direct appeal, the Court of Special Appeals stated that the police found "ten guns" in the vehicle; police records indicate that they found two.

In a written order issued on 5 February 2009, the trial court denied Marshall's motion with respect to the evidence seized from the vehicle, but granted the motion with respect to the evidence seized from the residence. The suppression court reasoned that there was no substantial basis for the issuing judge to find probable cause to search the residence, and concluded that the good faith exception did not apply "insofar as the warrant was so lacking in indicia of probable cause vis-a-vis the home as to render official belief in its existence entirely unreasonable."

Upon the State's appeal, the Court of Special Appeals reversed, holding in an unreported opinion that the trial court should have denied entirely Marshall's motion to suppress. The intermediate appellate court found applicable the good faith exception to the exclusionary rule, noting several similar cases in which the court applied the exception where police officers based their applications for search warrants on inferences drawn from sparse direct evidence. As such, the court concluded that Detective Aiken possessed a sufficient basis to support his reasonable, if erroneous, belief that the facts and inferences he presented in his affidavit in support of the warrant established probable cause to search Marshall's residence.

Upon Marshall's petition for writ of certiorari, we granted the writ, 411 Md. 598, 984 A.2d 243 (2009), to consider potentially (1) whether the judge issuing the search warrant possessed a substantial basis for finding that the warrant application stated probable cause to search the residence, and (2) if not, whether the evidence recovered from the search of the residence was admissible nevertheless under the good faith exception to the Fourth Amendment's exclusionary rule. We shall affirm the judgment of the Court of Special Appeals.

### III. STANDARD OF REVIEW

Because of our assumption as to Marshall's initial question, discussed *infra*, we highlight only the standard of review as to the good faith exception to the Fourth Amend-

ment's exclusionary rule. With regard to application of that standard, appellate review of the police officers' good faith reliance on a search warrant, deemed to have issued improperly, is a question of law, *McDonald v. State*, 347 Md. 452, 470 n. 10, 701 A.2d 675, 683 n. 10 (1997), and, as such, that review is conducted *de novo*. We review all of the facts in the affidavit in support of the warrant to determine the reasonableness of police reliance. *Connelly v. State*, 322 Md. 719, 735, 589 A.2d 958, 966 (1991).

## IV. ANALYSIS

■ This Court, in *McDonald v. State*, 347 Md. 452, 469, 701 A.2d 675, 683 (1997), (citing to *Leon*, 468 U.S. at 924–25, 104 S.Ct. at 3421), discussed and applied the suggestion in *Leon* that reviewing courts have the discretion "to decide the question of the officer's good faith, and the applicability of the objective good faith exception, without deciding whether probable cause is lacking under the Fourth Amendment." *See also Minor v. State*, 334 Md. 707, 715, 641 A.2d 214, 217 (1994). For purposes of our analysis in the present case, we shall take advantage of this discretion and assume *arguendo* that the search warrant issued here lacked probable cause as argued by Marshall. Thus, we confine our analysis of the merits to the good faith exception question.

■ Under the good faith exception to the Fourth Amendment's exclusionary rule, evidence obtained pursuant to a search warrant, later determined or assumed to have been issued improperly, should not be suppressed unless " 'the officers [submitting the warrant application] were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.' " *Connelly*, 322 Md. at 729, 589 A.2d at 964 (quoting *Leon*, 468 U.S. at 926, 104 S.Ct. at 3422, 82 L.Ed.2d at 701). As noted in *Connelly*, the good faith exception is inapplicable in four categories of cases:

> [S]uppression [is] an appropriate remedy (1) if the magistrate, in issuing a warrant, "was misled by information in an

affidavit that the affiant knew was false or would have known was false except for a reckless disregard of the truth," or (2) "in cases where the issuing magistrate wholly abandoned his judicial role so that no reasonably well trained officer should rely on the warrant," or (3) in cases in which an officer would not "manifest objective good faith in relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," or (4) in cases where "a warrant may be so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume the warrant to be valid."

322 Md. at 729, 589 A.2d at 963 (internal ellipsis and brackets omitted) (quoting *Leon*, 468 U.S. at 923, 104 S.Ct. at 3421, 82 L.Ed.2d at 698–99). The only question with regard to the warrant issued in the present case is whether the evidence obtained from the residence falls under the third enumerated category.[6]

 In this category of cases, evidence obtained during a police search should be excluded at trial if the warrant was so clearly lacking in indicia of probable cause as to render police reliance on the warrant entirely unreasonable. *See Patterson v. State*, 401 Md. 76, 106–07, 930 A.2d 348, 367 (2007) (describing the inquiry as "an objective test of a police officer's good faith reliance on a search warrant").[7] A warrant may be considered "so lacking in indicia of probable cause" if the applicant files merely a "bare bones" affidavit, one which contains only "wholly conclusory statements" and presents essentially no evidence outside of such conclusory statements.

---

**6.** Marshall does not contend that any of the other categories apply here.

**7.** This Court held in *Patterson* that, with regard to applications for search warrants, a reasonably well-trained police officer knows (1) that warrants may not authorize unreasonable searches, (2) that search warrants issued without probable cause are illegal, and (3) that affidavits that police officers submit in application for warrants must provide the issuing judge with a substantial basis for determining the existence of probable cause. 401 Md. at 107, 930 A.2d at 367.

*Id.* at 107–08, 930 A.2d at 367–68 (observing that the good faith exception applies even upon little and "substantially weak" evidence); *see also Agurs v. State,* 415 Md. 62, 82–83, 998 A.2d 868, 880 (2010) (the good faith exception applies whenever there exists "some indicia of probable cause"). Thus, the standard of factual support required to be presented by the affidavit in order for evidence to be admitted under the good faith exception is considerably lower than the standard for establishing a substantial basis for a finding of probable cause by a judge issuing a search warrant. *See McDonald,* 347 Md. at 473, 701 A.2d at 685 (finding indicia of probable cause sufficient for reasonable police reliance even assuming that those same indicia were insufficient to provide a substantial basis for a finding of probable cause); *Minor v. State,* 334 Md. 707, 715–16, 641 A.2d 214, 217–18 (finding that the absence of corroboration or verification of police informant's information was "not necessarily fatal" to the State's good faith exception argument); *West v. State,* 137 Md.App. 314, 355, 768 A.2d 150, 173 (2001) (holding information insufficient to establish a substantial basis to support a finding of probable cause but "[s]urely . . . enough" to apply the good faith exception).

Cases in which courts have refused to apply the good faith exception demonstrate that the safe harbor of the exception is foreclosed only when there exists essentially no evidence to support a finding of probable cause. For example, in *Agurs v. State,* police observed the defendant meet briefly with a suspected drug dealer and an unknown man; the unknown man exited the scene with a bulge in his pocket. *Agurs, supra,* 415 Md. at 71, 998 A.2d at 873. Subsequently, police watching the defendant's home observed him enter and leave his residence several times. *Id.* After investigation revealed that the defendant had a record of criminal convictions and that his house and cars appeared to be too expensive for his income as a Baltimore City municipal employee, the police applied for and received a search warrant for the defendant's residence. *Id.* at 72–73, 998 A.2d at 873–74. On appeal, we held the warrant to have been issued improperly

and concluded that the good faith exception did not apply to the evidence recovered during the search of the defendant's residence. *Id.* at 96–99, 998 A.2d at 888–90. In reaching our holding, we reasoned that "the lack of probable cause [was] apparent on the face of the affidavit" because none of the facts recited therein confirmed that the defendant was selling drugs or that, if he was, there existed any basis for a judge to infer a specific nexus between those drugs and the defendant's residence. *Id.* at 89–90, 998 A.2d at 884 (quotation marks omitted). Similarly, in *Greenstreet v. State,* the judge issued a search warrant for a residence based solely upon evidence obtained during a trash seizure that, according to the applying officer's affidavit, occurred over a year earlier. 392 Md. 652, 661, 898 A.2d 961, 966 (2006). On appeal, we held the warrant to be invalid and found the good faith exception inapplicable, noting again that "the lack of probable cause is apparent on the face of the affidavit." *Id.* at 682–83, 898 A.2d at 979.

In the present case, Detective Aiken's affidavit was not "bare bones," nor was it composed of wholly conclusory statements. Rather, it presented *some* evidence that supported its conclusion that probable cause to search Marshall's residence existed, even if that evidence, *as assumed arguendo for present purposes,* was insufficient to establish a substantial basis for the issuing judge's finding of probable cause. Specifically, the affidavit stated that a reliable informant reported to Detective Aiken that the suspect was a drug dealer; the detective confirmed that fact subsequently through two controlled buys. Although the drug-related evidence the police sought was not connected directly to Marshall's residence, both Marshall and the vehicle from which the police observed him sell drugs were. In addition, the police observed him return directly to the residence immediately following one of the controlled buys. Considering these observations, in light of the police officers' professed training and experience in narcotics investigations,[8] it was not unreasonable for Detective

---

8. Our reasoning gives some weight to the general conclusions expressed in the affidavit's boilerplate language that Marshall condemns.

Aiken to believe that his warrant application set forth sufficient probable cause with regard to the residence [9] and to rely subsequently on the warrant that the judge issued.

The affidavit here is distinguishable from affidavits in other cases where we have denied police the safe harbor of the good faith exception. Unlike the police in *Agurs*, who assumed that the suspect was a drug dealer based solely on their observations of suspicious-looking transactions, Detective Aiken confirmed that Marshall was selling drugs through two controlled buys of marijuana from him. In addition, the police in *Agurs*

His chief concern appears to be that, if boilerplate assertions may (in part) justify a search pursuant to a "bad" warrant under the good faith exception, police will be able to conduct any and all searches they desire simply by applying for warrants supported by mostly conclusory affidavits.

Marshall's argument in this regard ignores the fact that the good faith exception applies only *after* a neutral decision-maker issues a warrant. In any case, the neutral third party reviews fully the warrant application, and issues the warrant only upon finding that probable cause exists. As noted in *Leon*, the good faith exception is based on the principle that "the detached scrutiny of a neutral magistrate ... is a more reliable safeguard against improper searches than the hurried judgment of a law enforcement officer." 468 U.S. at 913–14, 104 S.Ct. at 3415–16, 82 L.Ed.2d at 692–93. Simply put, and despite Petitioner's concerns, in most cases of insufficient probable cause there will be no warrant on which to rely in good faith.

9. Marshall argues that the reasonableness of police officers' reliance on a warrant should depend entirely upon whether the conclusion that the warrant is not supported by probable cause is clearly established in the reasoning of applicable cases. We evaluate a related question in qualified immunity cases under essentially the same standard. *See Hope v. Pelzer*, 536 U.S. 730, 741, 122 S.Ct. 2508, 2516, 153 L.Ed.2d 666, 679 (2002) (holding that the relevant part of a qualified immunity inquiry is whether the appropriate law is clearly established in legal conclusions, not necessarily by cases with the same or similar facts). Even if we were to adopt that standard here, we nevertheless would reach the same result. Prior to the present case, we have not had occasion to consider the validity of search warrants issued in circumstances substantially similar to those in the present case. As such, the police here were justified in relying upon the judge's decision to issue the warrant; it relieved, at least to the police at the time the warrant was issued, any confusion about probable cause in relation to the warrant. In any event, even if we were to expect police officers to know the reasoning of applicable cases, we certainly would not expect them to apply it to new circumstances as carefully as judges should.

never observed the defendant entering or exiting his residence near the time of a sale, whereas the police in the present case observed Marshall drive home immediately after a sale, providing some, if not assumedly sufficient, evidence from which to infer probable cause for a search of his residence. Similarly, Detective Aiken's affidavit differs from the affidavit in *Greenstreet* in that it contains no glaring indication that the evidence on which it relies to establish probable cause is stale.

In sum, the police here made an effort to assemble *some*, if as assumed insufficient, evidence to provide a substantial basis from which the issuing judge could infer a finding of probable cause to search the residence based upon Detective Aiken's affidavit. As such, we hold that the evidence seized from the residence may be moored in the safe harbor of the good faith exception to the Fourth Amendment's exclusionary rule because the warrant was not "so lacking in indicia of probable cause" as to render police reliance on the issuance of the warrant entirely unreasonable.

Accordingly, we affirm the judgment of the Court of Special Appeals.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONER.**

Chief Judge BELL, Judge BATTAGLIA, and Judge MURPHY join the judgment only.