*Timothy Stevenson v. State of Maryland*, No. 92, September Term, 2016

**CRIMINAL LAW — FOURTH AMENDMENT — SEARCH WARRANT OF A CELL PHONE — SUBSTANTIAL BASIS —** The affidavit in support of the search warrant provided a substantial basis for the warrant-issuing judge to find probable cause to search Appellant's cell phone where the warrant affidavit stated that Appellant was arrested and found with an assault victim's wallet and shoes, Appellant had confessed to assault, and the affiant knew through his experience that suspects in robberies and assaults sometimes take pictures and send communications related to criminal activity on their cell phones.

**CRIMINAL LAW — SEARCH WARRANTS — INSUFFICIENT SHOWING OF PROBABLE CAUSE — GOOD FAITH EXCEPTION —** Evidence seized pursuant to an assumptively improperly issued search warrant for Appellant's cell phone fell within the good faith exception to the Fourth Amendment's exclusionary rule because the warrant to search Appellant's cell phone was not so lacking in indicia of probable cause as to render police reliance on the warrant entirely unreasonable.

Circuit Court for Anne Arundel County
Case No. C-02-CR-15-000098
Argued: May 8, 2017

IN THE COURT OF APPEALS
OF MARYLAND

No. 92

September Term, 2016

---

TIMOTHY STEVENSON

v.

STATE OF MARYLAND

---

Barbera, C.J.,
Greene
Adkins
McDonald
Hotten
Getty
Wilner, Alan M.
 (Senior Judge, Specially Assigned),

JJ.

---

Opinion by Barbera, C.J.
Greene and Adkins, JJ., concur.

---

Filed: August 31, 2017

Earlier today, we filed *Moats v. State*, __ Md. __ (filed Aug. 31, 2017). That case and this one are "companion" cases; they were argued on the same day and generally address the same legal issues and sub-issues. Like this case, the lead issue in *Moats* involved whether the search of a cell phone seized by the police incident to an arrest was executed in reliance on a properly-issued search warrant. Our analysis focused on whether the affidavit in support of the warrant provided a substantial basis for the judge who issued the warrant to find probable cause that the cell phone contained evidence connecting the petitioner to drug distribution as well as an ongoing investigation of a sexual assault allegation. We held in *Moats* that the affidavit met that standard. Given that holding, we had no cause to address whether, even had the warrant not complied with Fourth Amendment standards, the police executed the warrant in "good faith" under the standards outlined in *United States v. Leon*, 468 U.S. 897 (1984).

In the case at bar, we hold that the warrant affidavit supplied a substantial basis for the judge who issued the warrant to find probable cause to issue it. We also take this opportunity to explain why, even if the affidavit in support of the warrant did not provide a substantial basis for the warrant-issuing judge to find probable cause to search the cell phone of Timothy Stevenson, Appellant,[1] Appellant was not entitled to suppression of the evidence obtained while executing the warrant by application of the *Leon* "good faith" exception to the exclusionary rule.

---

[1] Because this matter came to this Court on bypass, the initial appeal is still pending in the Court of Special Appeals. Accordingly, the parties are captioned as Appellant and Appellee.

# I

## Procedural History

A. *The crime, initial police investigation, and warrant application process*

On July 22, 2015, Corporal Matthew Johnson of the Anne Arundel County Police Department was called to the Moose Lodge in Glen Burnie. Upon arrival, he found a man lying on the ground, with a bloodied face, his pants around his ankles, and no wallet or shoes. That individual was later discovered to be David Pethel. Mr. Pethel's injuries were life threatening, requiring hospitalization for several months. On July 23, 2015, Appellant was arrested in connection with a separate assault and robbery. The police found three items on Appellant at the time of his arrest—Mr. Pethel's wallet and shoes and Appellant's cell phone.

On July 24, 2015, Detective Brian Houseman sought and received a warrant to search Appellant's cell phone for evidence pertaining to the assault and robbery of Mr. Pethel. The warrant authorized the police to search "[e]lectronic communications information" stored on the cell phone. The search produced six photographs depicting Mr. Pethel just after the assault and robbery. Appellant filed a motion to suppress the photos on the ground that the police had exceeded the scope of the warrant because the photos were not "electronic communications."

Before there was a hearing on that motion to suppress, Detective Houseman prepared a second warrant application and affidavit, again to search Appellant's cell phone. The affidavit in support of the second warrant contained language identical to the first

warrant affidavit in all respects, save for the requested scope of the search of the cell phone and Appellant's acknowledgement that the cell phone belonged to him.

The facts in both affidavits stated that, "[o]n July 22, 2015 at approximately 2137hrs," Corporal Johnson "responded to the area of 1911 Crain Highway South in Glen Burnie, MD [the Moose Lodge] for a report of injured subject" and discovered Mr. Pethel lying injured on the parking lot of the Moose Lodge. Both affidavits also recounted that when the police arrested Appellant on July 23, 2015, he was wearing Mr. Pethel's sandals and carrying Mr. Pethel's wallet. The affidavits included that Appellant later admitted during an interview that he assaulted Mr. Pethel on July 22, 2015, and an assertion by the affiant, Detective Houseman, that Appellant "assaulted" and "robbed Mr. Pethel of property including his black leather billfold containing his identification and his Adidas sandals." Detective Houseman concluded:

> It is through my knowledge and experience that suspects in robberies and assaults will sometimes take pictures, videos and send messages about their criminal activities on their cellular phones. I am wishing to search this phone to attempt to recover any evidence of the robbery and assault of David Matthew Pethel which may be stored on the phone of Timothy Lamar Stevenson Jr.

Attached to each affidavit was a document outlining Detective Houseman's relevant experience and training as a police officer since 2002.[2]

---

[2] The affidavit attachment titled "Experience" stated the following:

> Your affiant, Det. Brian K. Houseman is currently a duly sworn officer of the Anne Arundel County Police Department, Anne Arundel County Maryland. Your affiant is currently assigned to the Eastern District Detective Unit. Your affiant was a duly constituted member of the Maryland Transportation Authority Police Dept. from May 2002 to May 2004. Your

Both affidavits were limited to requesting information "stored within a black touch screen Huawei phone for the services of cellular phone [number deleted] from 1600 hours on 22 July 2015 to 1000hrs on 23 July 2015," and the second affidavit added, "which Timothy Lamar Stevenson, Jr. identified as his phone during an interview on 23 July, 2015." Unlike the first warrant, which merely sought "electronic communications," the affidavit in support of the second warrant sought the following:

> Any and all information, including but not limited to all pictures, movies, electronic communications in the form of text, numeric, and voice messages, detailed phone records to include all incoming/outgoing calls and Facebook messages contained within phone.

---

affiant has been a duly constituted member of the Anne Arundel County Police Department since May 2004. Your affiant was assigned as a Patrol Officer from May 2004 to August 2012. Your affiant has been assigned to the Eastern District Detective Unit since August 2012 until present.

Your affiant has attended and successfully completed a twenty-six week Law Enforcement Academy conducted by the Maryland Transportation Authority Police Department. While a Police Officer, your affiant has investigated numerous crimes. Your affiant has made several arrests of suspects in cases of shootings, robberies and burglaries that resulted in convictions. Your affiant has assisted other officers in making arrests of individuals for multiple violations of the law. I have written and served numerous search warrants, as well as assisting others in the execution of search and seizure warrants for various crimes.

Your affiant, Det. Brian K. Houseman has attended and successfully completed the following relevant specialized police training schools/courses during the course of his career:

- Maryland Transportation Auth. Police Acad.
- Fundamentals of Criminal Investigations, Maryland State Police
- Interview and Interrogation Training
- Investigative Training Eyewitness Evidence
- Forensic Statement Analysis
- Introduction to Technology Related Investigations

4

The affidavit did not include any information about the existence of the first warrant, much less information that, upon execution of the first warrant, the police discovered the six photos of Mr. Pethel following the assault and robbery.

The second warrant application and affidavit were presented to a judge, who issued the warrant on January 6, 2016. The judge who issued that warrant was not the judge who issued the first warrant. Upon executing the second warrant, the police downloaded the cell phone data and obtained the same six photos of Mr. Pethel lying on the ground, covered in blood, with his pants around his ankles, and appearing to have been beaten.

B. *The second motion to suppress and hearing*

Appellant, through counsel, filed a second motion to suppress the six photos depicting the victim of the assault. Appellant made no argument in the motion or at the suppression hearing that the second warrant was in any manner tainted by the first warrant or its execution. Rather, the parties, then and now, rely for their arguments solely on the second warrant and its supporting affidavit. Further references in this opinion are therefore to the second warrant and its affidavit.

Neither party called any witnesses at the hearing on the motion to suppress. Appellant contended that the information presented in the affidavit did not provide probable cause that the evidence sought would be found on Appellant's cell phone. Relying upon *Agurs v. State*, 415 Md. 62 (2010), Appellant argued in particular that the warrant lacked specific facts connecting the crime and the cell phone. The State responded that the suppression court should take into account that it is now "common knowledge" that people take pictures and videos on their cell phones of the crimes they commit. The

5

State also emphasized the detailed facts set forth in the affidavit, which included Appellant's admission that he assaulted Mr. Pethel.

The following day, the circuit court issued an order denying the motion. The court concluded that the warrant contained adequate facts and details to satisfy the probable cause requirement. The court explained:

> Both [the first and second] warrants contain facts supported by affidavit that the victim, [Mr.] Pethel, was assaulted and that the Defendant, Timothy Stevenson "admitted to being at Frank's Den the same time as David Pethel and assaulting him at the location of the Moose Lodge . . . " The affidavit also indicates that based on the officers' "knowledge and experience that suspects in robberies and assaults will sometimes take pictures, videos and send messages about their criminal activities on their cell phones." This Court must give due deference to the training and experience of the officer in this case. The judges who issued the warrants correctly did so as well.

Appellant elected a bench trial. At its conclusion, the court found him guilty of first-degree assault, second-degree assault, robbery, reckless endangerment, and theft of property valued at less than $1000. Appellant noted an appeal and, while that appeal was pending in the Court of Special Appeals, he filed a petition for writ of certiorari presenting three questions:

> 1. Can an officer affiant's generalized claim that suspects sometimes have evidence of crimes on their cell phones alone provide the requisite nexus between the crime alleged and the phone to be searched to support the issuance of a search warrant?
>
> 2. Did the trial court err in denying [Appellant]'s motion to suppress the fruits of a search conducted pursuant to a warrant issued for his cell phone where there was no substantial basis to find probable cause because the warrant application lacked any nexus between the alleged criminal activity and the cell phone to be searched beyond the officer affiant's generalized statement that, in his experience, "suspects in robberies and assaults will sometimes take pictures, videos and send messages about their criminal activities on their cellular phones"?

6

3.  Does the good faith exception to the exclusionary rule apply where a search warrant for a cell phone is issued on the basis of the affiant officer's statement that, in his experience, suspects in robberies and assaults "sometimes" have pictures, videos, or messages about the crimes in their cell phones, and the warrant application fails to allege any nexus between the crimes and the phone, any potential communication with conspirators, or the commission of a crime that requires communications with third parties?

We granted the petition prior to oral argument in the Court of Special Appeals, *Stevenson v. State*, 451 Md. 579 (2017), and affirm the judgment of the circuit court.

II

Discussion

A. *The parties' contentions*

Appellant argues that there was not a substantial basis for the judge who issued the warrant to conclude that it was supported by probable cause. He contends that the warrant affidavit failed to provide a nexus between the crime alleged and the "place" the police sought to search, Appellant's cell phone. Appellant also argues that the *Leon* good faith exception to the exclusionary rule does not save the photos obtained during the execution of the warrant from application of that rule. According to Appellant, no reasonable officer would have reasonable grounds to believe that the warrant was properly issued, given that the affidavit relied upon the notion that people who commit crimes "sometimes" have evidence of such crimes on their cell phones.

The State responds that the affidavit in support of the warrant to search the cell phone supplied the requisite substantial basis for the suppression court to uphold the warrant. The State analogizes this case to the circumstances in *Moats v. State*, 230 Md.

App. 374 (2016), adding that, when Appellant was arrested for another robbery and assault, he was found with the cell phone and in possession of Mr. Pethel's wallet and sandals. The State further argues that, even if the warrant is deemed invalid, the good faith exception to the exclusionary rule applies to the officers' good-faith reliance on the warrant. The State points out that two different judges in this case found the affidavit sufficient to show probable cause; it is, therefore, "difficult to see" how the police could not have relied upon the warrant in good faith when executing it.

B. *Substantial basis for issuance of the warrant*

The Fourth Amendment to the United States Constitution prohibits the issuance of any warrant except "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "Probable cause" is a term of art in Fourth Amendment jurisprudence and is defined as

> "a 'practical, nontechnical conception' that deals with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983)). Thus, "'the *quanta* . . . of proof' appropriate in ordinary judicial proceedings are inapplicable to the decision to issue a warrant. Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the [probable-cause] decision." *Id.* at 371 (quoting *Gates*, 462 U.S. at 235).

*Moats*, slip op. at 15. Probable cause is "a fluid concept," *Gates*, 462 U.S. at 232, "incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances," *Pringle*, 540 U.S. at 371. Consequently, the affidavit in support of a search warrant, viewed in its totality, need only

8

provide "a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238; *see also Texas v. Brown*, 460 U.S. 730, 742 (1983) (plurality opinion) ("[Probable cause] does not demand any showing that such a belief be correct or more likely true than false. A 'practical, nontechnical' probability that incriminating evidence is involved is all that is required." (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949))). The Supreme Court has observed that probable cause may be based on "common-sense conclusions about human behavior." *Gates*, 462 U.S. at 231 (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)).

As we review the search warrant in the present case, we bear in mind not only "the Fourth Amendment's strong preference for searches conducted pursuant to a warrant," *Gates*, 462 U.S. at 236, but also the Supreme Court's recognition that "[r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause," *Leon*, 468 U.S. at 914. In consideration of both principles, the Supreme Court has "concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination." *Id.* (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). Thus, "in a doubtful or marginal case a search under a warrant may be sustainable where without one it would fall." *Id.* (quoting *United States v. Ventresca*, 380 U.S. 102, 106 (1965)). "[S]o long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Gates*, 462 U.S. at 236 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). If that "substantial basis" standard is met, then any court called

9

upon thereafter to review the warrant is required to uphold it. *Id.* at 238–39; *see also Patterson v. State*, 401 Md. 76, 89–90 (2007).

We conclude that the judge who issued the warrant had a substantial basis for finding probable cause to search Appellant's cell phone for "[a]ny and all information, including but not limited to all pictures, movies, electronic communications in the form of text, numeric, and voice messages, detailed phone records to include all incoming/outgoing calls and Facebook messages contained within phone." We reach that conclusion by taking into account the detailed description of the historical facts that supported the warrant; the sworn declaration of Detective Houseman that, "[i]t is through my knowledge and experience that suspects in robberies and assaults will sometimes take pictures, videos and send messages about their criminal activities on their cellular phones"; the limitation in the affidavit to information "stored" on the phone "from 1600 hours on 22 July 2015 to 1000hrs on 23 July 2015," when the assault occurred; and the Supreme Court's recognition of the prevalence of cell phones in the population and the degree of detail of one's daily life that is often contained in a cell phone. *See Riley v. California*, 134 S. Ct. 2473, 2490 (2014).

Appellant argues that the warrant affidavit did not set forth direct evidence that the cell phone contained evidence of the crime he was alleged to have committed. We explained in *Moats* why a warrant affidavit need not include direct evidence that the evidence sought would be found in the place to be searched:

> [D]irect evidence has never been required by the Fourth Amendment. *Ornelas v. United States*, 517 U.S. 690, 700 (1996) ("[O]ur cases have recognized that a police officer may draw inferences based on his own experience in deciding whether probable cause exists."); *Holmes v. State*, 368 Md. 506, 522 (2002) ("Direct evidence that contraband exists in the home is

10

not required for a search warrant; rather, probable cause may be inferred from the type of crime, the nature of the items sought, the opportunity for concealment, and reasonable inferences about where the defendant may hide the incriminating items."); *State v. Ward*, 350 Md. 372, 379 (1998) (concluding that the suspect's home was a "probable place for secreting objects" related to the crime) (quoting *Mills v. State*, 278 Md. 262, 280 (1976)). There must, of course, be a reasonable basis for such an inference to be drawn. *See Holmes*, 368 Md. at 523; *see also Agurs v. State*, 415 Md. 62, 87 (2010).

*Moats*, slip op. at 17–18.

Appellant argues that the warrant affidavit does not permit a reasonable inference that his cell phone contained evidence of the assault and robbery of Mr. Pethel. He rests his argument primarily on Detective Houseman's statement in the affidavit that, "[i]t is through my knowledge and experience that suspects in robberies and assaults will sometimes take pictures, videos and send messages about their criminal activities on their cellular phones." Focusing on the word "sometimes," Appellant argues that the statement is "so generalized that it could provide the basis for a search on suspicion of any offense, undermining the substantial protections for cell phones recognized in *Riley*."

We address first the latter part of Appellant's contention. We agree with Appellant that the *Riley* Court recognized the substantial privacy concerns attendant to searches of cell phones. It is precisely for that reason the Supreme Court explained why the reasonableness clause of the Fourth Amendment does not allow for an automatic rule authorizing the police to conduct in every instance a warrantless search of a cell phone seized incident to a lawful arrest. Rather, absent an exigency at the time of arrest that would permit an immediate search, the police must obtain a warrant to conduct one.

We note, too, the *Riley* Court's declaration that cell phones can hold far more data

11

than normally would be found in a home. *See Riley*, 134 S. Ct. at 2490–91. The Court said:

> [I]t is no exaggeration to say that many of the more than 90% of American adults who own a cell phone keep on their person a digital record of nearly every aspect of their lives—from the mundane to the intimate. . . . A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form . . . .

*Id.* "It would not be an overstatement to characterize cell phones as the repository of personal effects in digital form that heretofore would be found in physical form in the home or at the office." *Moats*, slip op. at 20.

The *Riley* Court did not even intimate, much less state, that simply because cell phones hold a "broad array" of information, a search warrant cannot issue. 134 S. Ct. at 2491. Quite the opposite. The *Riley* Court mandated that, save for an exigency that demands an on-the-spot intrusion into the cell phone at the time of an arrest, the police may seize—and secure—a cell phone. 134 S. Ct. at 2493–94. But, the police may not search the phone without a duly authorized search warrant that complies in all respects with the dictates of the Fourth Amendment regardless of the "broad array" of information the cell phone may hold. *Id.* "That is consistent with the Supreme Court's long-standing Fourth Amendment jurisprudence." *Moats*, slip op. at 20 (*citing Andresen v. Maryland*, 427 U.S. 463, 480–82 (1976) (observing that, in searching for an item identified in the warrant, the police executing the warrant may legitimately search through a large volume of other information in pursuit of the item that is the subject of the warrant)).

12

We return to Appellant's particular concern with Detective Houseman's use of the word "sometimes" in describing the frequency with which photos are found on cell phones of people suspected of committing certain crimes. The detective's use of "sometimes" must be considered in the context in which it was made. Detective Houseman, in swearing that, in his knowledge and experience, people suspected of "robberies and assaults will sometimes take pictures . . . on their cellular phones," understood the purpose of his sworn statement in setting forth probable cause for the search. In that context, we suspect that the detective intended "sometimes" to indicate that the frequency of discovering such evidence on cell phones is more than "rarely" and less than "more often than not."

Beyond that, whether it is the judge who is presented with an application for a search warrant or the judge or appellate court reviewing a warrant for a substantial basis to support its issuance, the information set forth in a warrant affidavit is to be considered in its totality. No single item of information in the affidavit stands alone in supplying the requisite probable cause for the warrant-issuing judge, or the "substantial basis" analysis that reviewing courts must use in assessing that judge's probable cause determination. *See Gates*, 462 U.S. at 238; *cf. United States v. Arvizu*, 534 U.S. 266, 273–74 (2002) (noting, in the context of an officer's reasonable suspicion of criminal conduct, that the "totality of the circumstances" are to be considered when determining whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Arvizu*, 534 U.S. at 273 (internal quotation marks omitted);

13

*see also Ornelas v. United States*, 517 U.S. 690, 699 (1996) (reviewing courts must give "due weight" to factual inferences drawn by resident judges and local law enforcement officers).

We give Detective Houseman's statement "due weight." Detective Houseman swore to his training and experience investigating robberies and assaults. He also included that, based on his knowledge and experience, "suspects in robberies and assaults will sometimes take pictures, videos and send messages about their criminal activities on their cellular phones." He provided in the affidavit a detailed summary of the facts surrounding the crime—including the posture of the robbery victim, who was prone on the ground, beaten, and with his pants pulled down to his ankles. The affidavit also included Appellant's admission to the assault on the robbery victim. We bear in mind, as well, that the warrant affidavit sought only such information as was stored within the eighteen-hour period encompassing the time when Appellant assaulted and robbed Mr. Pethel. All of this, when coupled with the *Riley* Court's recognition that "more than 90% of American adults who own a cell phone keep on their person a digital record of nearly every aspect of their lives—from the mundane to the intimate," provides the substantial basis for the warrant-issuing judge reasonably to infer a fair probability that Appellant's cell phone contained, among other digital evidence, photos connecting him to the assault and robbery.

For these reasons, we hold that the suppression court judge properly denied Appellant's motion to suppress the photos found during the execution of the warrant.

C. *The photographs, in any event, fall within the* Leon *good faith exception to the exclusionary rule.*

14

Even were we to decide that the warrant to search Appellant's cell phone was not supported by a substantial basis for its issuance, we would not require exclusion of the evidence seized pursuant to the warrant because the police relied in good faith upon the warrant in conducting the search.

The Supreme Court established the good faith exception to the exclusionary rule in *United States v. Leon*, 468 U.S. 897 (1984). *See also Massachusetts v. Sheppard*, 468 U.S. 981 (1984). The Court held in *Leon* that, even if it is later determined that a warrant was invalid for lack of probable cause, the reviewing court will not suppress evidence obtained during execution of that warrant if the officers reasonably relied upon the warrant issued by a detached and neutral magistrate. *Leon*, 468 U.S. at 922–24. The *Leon* Court concluded that the affidavit in support of the warrant at issue in that case "provided evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause." *Id.* at 926. Consequently, it was "objectively reasonable" for the police to have relied on the warrant. *Id.*

Application of the good faith doctrine outlined in *Leon* results in exempting from exclusion evidence that is seized pursuant to a warrant that falls short of satisfying the dictates of the Fourth Amendment; that is, a warrant that supplies fewer facts in support of probable cause than would be necessary to satisfy the "substantial basis" test. This Court recognized as much in *Patterson v. State*, 401 Md. 76, 105 (2007). We stated there that "application of the good faith exception does not hinge upon the affidavit providing a substantial basis for determining the existence of probable cause." *Id.* The "standard of factual support required to be presented by the affidavit in order for evidence to be admitted

15

under the good faith exception is considerably lower than the standard for establishing a substantial basis for a finding of probable cause by a judge issuing a search warrant." *Marshall v. State*, 415 Md. 399, 410 (2010).

The *Leon* Court recognized, however, that there are certain circumstances under which police will be unable reasonably to rely on a warrant that later is determined to have been issued improperly:

> Suppression therefore remains an appropriate remedy if [1] the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. The exception we recognize today will also not apply in cases where [2] the issuing magistrate wholly abandoned his judicial role . . . [and] no reasonably well trained officer should rely on the warrant. Nor would an officer manifest objective good faith in [3] relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. Finally, [4] depending on the circumstances of the particular case, a warrant may be so facially deficient—*i. e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.

*Leon*, 468 U.S. at 923 (citations and internal quotation marks omitted); *see also Patterson*, 401 Md. at 104.

Appellant does not contend that the warrant-issuing judge was misled by information in the affidavit or abandoned his judicial role in considering the warrant application, or that the warrant does not meet the particularity requirement. Appellant's contention, rather, is that no "reasonably" well-trained officer could "reasonably" rely on the warrant because the warrant on its face lacked probable cause, therefore focusing on the third situation articulated above.

16

"In this category of cases, evidence obtained during a police search should be excluded at trial if the warrant was so clearly lacking in indicia of probable cause as to render police reliance on the warrant entirely unreasonable." *Marshall*, 415 Md. at 409. "A warrant may be considered 'so lacking in indicia of probable cause' if the applicant files merely a 'bare bones' affidavit, one which contains only 'wholly conclusory statements' and presents essentially no evidence outside of such conclusory statements." *Id.* (quoting *Patterson*, 401 Md. at 107–08); *see also Leon*, 468 U.S. at 915; *Nathanson v. United States*, 290 U.S. 41, 47 (1933) (holding that a warrant may not "rest upon mere affirmance of suspicion or belief without disclosure of supporting facts or circumstances").

The bare bones exception "is inapplicable where there is 'some indicia of probable cause.' It is also inapplicable when reasonable minds might disagree about its applicability. It will apply, however, when the absence of probable cause 'is apparent on the face of the affidavit.'" *Agurs*, 415 Md. at 82–83 (citations omitted); *see also Marshall*, 415 Md. at 409.

The test for determining whether a warrant affidavit is "bare bones" is an objective one. The test asks whether "officers, exercising professional judgment, could have reasonably believed that the averments of their affidavit related to a present and continuing violation of law, not remote from the date of their affidavit, and that the evidence sought would be likely found at [the place identified in the affidavit]." *Patterson*, 401 Md. at 107 (citation omitted).

Assuming, solely for purposes of our discussion, that the warrant upon which the police relied in executing the search of Appellant's cell phone did not satisfy the dictates

17

of the Fourth Amendment, exclusion of the photos is not the proper result. By application of the good faith doctrine, the evidence the police found on the cell phone was subject to suppression if and only if, as argued by Appellant, the search rested on a "bare bones" warrant. The information supplied in the affidavit, at the very least, rose above mere "conclusory statements" on the part of the affiant. That is particularly so in light of the *Riley* Court's recognition that the vast majority of "adults who own a cell phone keep on their person a digital record of nearly every aspect of their lives—from the mundane to the intimate." 134 S. Ct. at 2490.

Finally, if thoughtful and competent judges could disagree on this point, then it follows that the police relied in good faith upon the warrant. In that regard, we agree with the State that the issuance of the search warrant by not just one judge—but two judges independently of one another—weighs in favor of applying the good faith exception in this case. *See Greenstreet v. State*, 392 Md. 652, 679 (2006) ("[W]here the warrant is based on 'evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause,' then the good faith exception will apply." (quoting *Leon*, 468 U.S. at 926)).

We hold that, even assuming the warrant to search Appellant's cell phone was not supported by a substantial basis for its issuance, the police relied in good faith upon it when executing the warrant to search the cell phone.

III

Final Thoughts and Conclusions

18

As a postscript to this holding, we repeat here the guidance offered at the close of our *Moats* opinion:

> Before concluding this opinion, we offer a few thoughts for judges—whether they be tasked with considering a warrant application or reviewing the decision of the judge who issued the warrant—that they might want to consider when the search at issue involves a cell phone. Unlike those of us who review search warrants for substantial basis or good faith execution, the judges of our circuit courts and the District Court to whom warrant applications are presented have the more challenging task of determining whether probable cause exists in the first instance. In examining an affidavit in support of a warrant to search a cell phone, as in any other warrant application, judges always must consider the totality of the information contained in the affidavit.
>
> Not every affidavit will (or should) result in issuance of a warrant to search a cell phone. We can imagine situations in which the nature of the crime will not support a warrant to search the suspect's cell phone; examples might include traffic offenses, public nuisance crimes, and the like. Even in cases where the connection between the suspected crime and the cell phone is more likely to be established, the lack of factual detail or other circumstances might countenance against a finding of probable cause. The affiant's professed training and experience might fall short of demonstrating to the judge's satisfaction that the affiant's prediction can be relied upon in determining whether the evidence sought will be found in the cell phone the affiant wants to search.
>
> In the end, each application for a warrant to search a cell phone is to be addressed by the judge on the merits of the affidavit. The judge will necessarily consider the nature of the crime being investigated, the facts provided in support of the connection between that crime and the cell phone to be searched, and, depending upon the affiant's demonstrated training and experience, the degree to which the deference owed to the affiant adds to the ultimate decision. The decision of the warrant-issuing judge will ultimately rest on whether, in its totality, the affidavit sets forth a fair probability that the information will be found in the cell phone to be searched.

*Moats*, slip op. at 22–23.

We have concluded that the warrant-issuing judge had a substantial basis for issuing the search warrant and, in any event, that the police acted in good faith in relying upon it. We therefore affirm the judgment of the Circuit Court for Anne Arundel County.

19

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

Circuit Court for Anne Arundel County
Case No.: C-02-CR-15-000098
Argued: May 8, 2017

IN THE COURT OF APPEALS

OF MARYLAND

---

No. 92

September Term, 2016

---

TIMOTHY STEVENSON

v.

STATE OF MARYLAND

---

Barbera, C.J.
Greene
Adkins
McDonald
Hotten
Getty
Wilner, Alan M., (Senior Judge, Specially Assigned),

JJ.

---

Concurring Opinion by Adkins, J., which Greene, J., joins.

---

Filed: August 31, 2017

I agree with the Majority's holding that the good faith exception to the Fourth Amendment exclusionary rule applies in this case, and the search should be upheld on that basis. Most respectfully, I write separately because I am troubled by the implications of the Majority's holdings in both *Stevenson v. State*, ___ Md. ___ (2017), and *Moats v. State*, ___ Md. ___ (2017), regarding probable cause to search cell phones.[1] I fear that the Majority has paved the way for law enforcement to search a cell phone without a nexus between the criminal activity and the phone to be searched. We should not apply *Riley v. California*, 134 S. Ct. 2473 (2014), a decision protecting the privacy interest of individuals in their phones, to prop up a warrant based almost exclusively on the police officer's training and expertise—rather than facts.

### PROBABLE CAUSE

In *Riley*, a unanimous Supreme Court held that law enforcement officers must obtain a warrant before searching a cell phone. *Id.* at 2485. In reaching that decision, the Court pointed out that cell phones, when compared with objects customarily found on an arrestee's person, "differ in both a quantitative and a qualitative sense . . . ." *Id.* at 2489. The modern cell phone has a significant impact on individual privacy because of storage capacity, the variety of information, and the "pervasiveness" of cell phones. *Id.* at 2489–90. The Chief Justice explained that an individual without a cell phone is the exception— the rule appears to be that people carry "a cache of sensitive personal information with them" nearly everywhere at all times. *Id.* at 2490. The fact that the data and information

---

[1] I have discussed an additional concern regarding *Moats v. State*, ___ Md. ___ (2017), in a separate concurring opinion accompanying that case.

on a phone can "form a revealing montage of the user's life" supported the conclusion that permitting warrantless searches of cell phones would jeopardize the privacy interests of the majority of the United States' population. *Id.* at 2490–91. The Court analogized cell phones to homes, explaining that

> [A] cell phone search would typically expose to the government far *more* than the most exhaustive search of a house: A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form—unless the phone is.

*Id.* at 2491 (emphasis in original).

Chief Justice Roberts emphasized that technological advances do not alter the fundamental principles and protections of the Fourth Amendment. "The fact that technology now allows an individual to carry such information in his hand does not make the information any less worthy of the protection for which the Founders fought." *Id.* at 2495. To search a cell phone, law enforcement is required to obtain a warrant supported by probable cause.

Probable cause requires an assessment, based on the totality of the circumstances, of whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). There must be a "nexus between criminal activity and the place to be searched." *Agurs v. State*, 415 Md. 62, 84 (2010). Given the totality of the circumstances, I cannot conclude that a substantial basis for a warrant existed in either of these cases.

2

In *Stevenson*, the Appellant, Timothy Stevenson, assaulted and robbed David Pethel on July 22, 2015. The next day he attempted to assault and rob another individual. Officers arrested Stevenson, and discovered items belonging to Pethel on his person. Stevenson also had a cell phone in his possession when he was arrested, which he told officers was his own. Detective Houseman sought a warrant to search Stevenson's phone based on these facts. In his affidavit, Houseman explained that "[i]t is through my knowledge and experience that suspects in robberies and assaults will **sometimes** take pictures, videos and send messages about their criminal activities on their cellular phones." (Emphasis added.)[2]

The Majority reasons that Houseman's affidavit, Stevenson's admission that he assaulted Pethel, and the Supreme Court's recognition of the pervasiveness of cell phones provided a "substantial basis" for a judge to conclude that Stevenson's cell phone contained evidence connecting him to the crime. *Stevenson*, Maj. Slip Op. at 14–15. But Houseman did not allege facts permitting inferences that Stevenson had a co-participant, had communicated with others about the robbery, or had photographed his victim.

In *Moats*, the Petitioner, Timothy Moats, was arrested on drug-related charges. Officers were also investigating a sexual assault. The drug charges arose from an incident that occurred two weeks before Moats's arrest. Moats provided marijuana and Suboxone to other teenagers in a car on the way to a party. One of the individuals in the car, A.D.C., alleged that she had been sexually assaulted that evening at the party, but could not

---

[2] Houseman's warrant affidavit requested data on Stevenson's phone stored during an eighteen-hour period, "from 1600 hours on 22 July 2015 to 1000 hrs on 23 July 2015." This request was appropriately tailored to the circumstances of the crime of arrest. The warrant incorporated the affidavit.

3

remember where the party was, nor who assaulted her. Sergeant Zimmerman interviewed the other teenagers in the car, who corroborated this account of distribution. Moats had his cell phone with him when he was arrested. Zimmerman sought a warrant to search Moats's cell phone based on these facts, and his "training and experience" that "individuals who participate in such crimes communicate via cellular telephones, via text messages, calls, emails, etc."

As in *Stevenson*, the Majority in *Moats* reasons that the facts set forth in the affidavit, the prevalence of cell phones, the data contained in cell phones, and the "particulars of the events" leading to Moats's arrest, provide a substantial basis to conclude that probable cause existed. *Moats*, Maj. Slip Op. at 20–21. To be sure, the "crime of drug distribution involves at least two participants . . . ," *id.* at 21, but there are no references to phone communications in the specific events leading up to Moats's arrest. Moats gave the drugs in person to his friends while driving to a party. Nor are there any facts surrounding the alleged sexual assault that indicate that anyone used a phone to document or communicate about the assault. The affidavit does not allege any facts suggesting that Moats was engaged in broader drug distribution activities.

In both of these cases, the Majority fails to offer an explanation for why these facts provide a sufficient nexus between the crimes and the likelihood that evidence would be found on the arrestees' phones. Neither of the affiants provided an articulable reason to believe that either arrestee had used his phone in the commission of the crime, or had evidence of the crime on his phone. The affiants relied only on their general experience that individuals who commit these crimes communicate by cell phone through text

4

messages, calls, and emails. The affiants' experience, absent any factual basis to support the inference that the arrestees' cell phones were connected to the crimes, cannot suffice as probable cause. The Majority opinion, with its emphasis on officer experience, can readily be interpreted to mean that as long as an officer has sufficient experience in investigation, his belief that a cell phone contains pertinent evidence is sufficient to support a warrant. An officer's training and experience cannot substitute for an "evidentiary nexus" between the place to be searched and criminal activity suspected. *United States v. Schultz*, 14 F.3d 1093, 1097 (6th Cir. 1994).

Although it mentions that the nature of the crime should be considered, the Majority simply uses the ubiquitous nature of cell phones to support the magistrate's finding of probable cause. *Stevenson*, Maj. Slip Op. at 14–15; *Moats*, Maj. Slip Op. at 20–21. A statement that criminals tend to use phones in crimes provides support, according to the Majority, for a warrant—even if the crime at issue is unconnected to use of a cell phone. *Stevenson*, Maj. Slip Op. at 14; *Moats*, Maj. Slip Op. at 19–20.

The Majority relies on the following quotation from the Supreme Court in *Riley*:

> [I]t is no exaggeration to say that many of the more than 90% of American adults who own a cell phone keep on their person a digital record of nearly every aspect of their lives—from the mundane to the intimate. . . . A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form . . . .

*Stevenson*, Maj. Slip Op. at 11–12 (quoting *Riley*, 134 S. Ct. at 2490–91). The Supreme Court, however, also explained—in that same discussion—that "allowing police to scrutinize such records on a routine basis is quite different from allowing them to search a

5

personal item or two . . . ." *Riley*, 134 S. Ct. at 2490. Clearly, the Supreme Court intended to highlight the substantial threat to individual privacy if law enforcement officers could search cell phones without a warrant supported by probable cause, not to provide the primary factual basis to support a warrant in all but the most minor of crimes.

In *Riley*, the Supreme Court drew parallels between cell phones and houses, and acknowledged that the information contained in a cell phone may be just as substantial as that typically found in a house. *Riley*, 134 S. Ct. at 2491. Although the Court did not explicitly say so, it appears that the Justices considered phones at least as worthy of protection as homes. For that reason, it is instructive to look to Maryland precedent addressing warrants to search suspects' homes.

To obtain probable cause to search a suspect's home, "mere observation, documentation, or suspicion of a defendant's participation in criminal activity will not necessarily suffice by itself, to establish probable cause that inculpatory evidence will be found in the home." *Holmes v. State*, 368 Md. 506, 523 (2002). Officers need not supply direct evidence. Instead "probable cause may be inferred from the type of crime, the nature of the items sought, the opportunity for concealment, and reasonable inferences about where the defendant may hide the incriminating items." *Id.* at 522. In *Agurs*, this Court relied on *Holmes* and *State v. Coley*, 145 Md. App. 502 (2002) to "establish relevant principles" to determine when a sufficient nexus exists to search a suspect's home. *Agurs*, 415 Md. at 86–88. Here, the affiants provided no support, other than their training and experience, for the statement that the arrestees used their phones in the commission of a crime, or that the phones contained evidence of a crime. This is precisely the lack of nexus

6

that this Court and the Court of Special Appeals have condemned as impermissible to support probable cause for a search warrant.[3]

In *Coley*, the Court of Special Appeals explained that "Maryland . . . has explicitly rejected th[e] notion" that there is probable cause to believe that drug dealers will keep contraband and records of transactions in their homes. 145 Md. App. at 527 n.18. As we explained in *Agurs*, while officers may draw reasonable inferences that evidence may be found in a location, "there **must be facts shown** from which this reasonable inference can be drawn." 415 Md. at 87 (emphasis added). Facts that connect a suspected drug dealer to his home at the time of drug transactions permit that inference. *Id.* We have not adopted a rule that probable cause to search a home exists because drug dealers tend to keep drugs in their home. We should not adopt a rule that translates that rationale to phones.

The Majority offers a slim exception to its holding. It suggests that in some cases "the nature of the crime will not support a warrant to search the suspect's cell phone . . . ." *Moats*, Maj. Slip Op. at 23. But the only examples given are "traffic offenses, public nuisance crimes, and the like." *Id.* This exception creates an amorphous, but seemingly narrow standard in which I cannot find a limiting principle.

Other jurisdictions require more to connect a cell phone to a crime before finding probable cause to issue a warrant to search the phone. In *Commonwealth v. White*, 59 N.E.3d 369 (Mass. 2016), the Supreme Judicial Court of Massachusetts concluded that

_____

[3] I in no way discount the extensive training and experience of our State's law enforcement officers. Our officers are extremely capable. For that reason, I do not doubt their ability to provide magistrates with additional facts that draw a nexus between a phone and suspected criminal activity.

7

"probable cause to search or seize a person's cellular telephone may not be based solely on an officer's opinion that the device is likely to contain evidence of the crime under investigation . . . ." *Id.* at 371–72. Detectives had seized the suspect's phone because they had reason to believe the defendant had participated in a crime, and their training and experience suggested the device might contain relevant evidence. *Id.* at 376.

The Massachusetts Supreme Judicial Court explained that this connection alone could not satisfy the nexus requirement. Relying upon Massachusetts precedent, the court concluded that even if probable cause to suspect the defendant committed a crime exists, officers may not search or seize a cell phone unless they have "information establishing the existence of particularized evidence likely to be found there." *Id.* The court rejected the inference that because phones are commonly used, they contain evidence. It reasoned that if that inference was sufficient for probable cause "it would be a rare case where probable cause to charge someone with a crime would not open the person's cellular telephone to seizure and subsequent search." *Id.* at 377 (citing *Riley*, 134 S. Ct. at 2492).

The "particularized evidence" standard that the Massachusetts Supreme Judicial Court set may be too high. I do not suggest that officers must be able to identify the specific information they seek. But judges should not issue warrants to search cell phones that may contain exhaustive details of an individual's life simply because criminals in other cases have **sometimes** used cell phones in the commission of crimes. Officers relying on specific facts of a crime to support an affidavit should be able to point to facts that support a reasonable inference that evidence may be found on a suspect's cell phone.

8

Federal court cases have also required a link between the phone and the crime to justify probable cause. *See United States v. Ramirez*, 180 F. Supp. 3d 491, 495 (W.D. Ky. 2016) (suspect's possession of a phone at the time of arrest for drug conspiracy does not by itself establish a sufficient nexus between the phone and alleged criminal activity); *see also United States v. Bass*, 785 F.3d 1043, 1049 (6th Cir. 2015) (sufficient nexus existed when suspect and co-conspirators used their phones to communicate during fraudulent activities and suspect was using his phone before arrest to alert co-conspirators); *Mathis v. United States*, 767 F.3d 1264, 1276 (11th Cir. 2014) (probable cause existed because affiants showed evidence of communications between suspect and alleged victim on the suspect's phone).

The Supreme Court has explained that "probable cause is a fluid concept—turning on the assessment of probabilities in **particular factual contexts** . . . . " *Gates*, 462 U.S. at 232 (emphasis added). But probabilities require a footing in facts. Although "common-sense conclusions about human behavior" are relevant to determining when probable cause exists, *see id.* at 231–32, they should not be the sole criteria for assessment. Before a judge authorizes a warrant to search a cell phone, there should be a factual context that makes it probable that the suspect's phone has been used in a crime, or that evidence of the crime may be found on the phone.

**CONCLUSION**

*Riley* does not address what constitutes probable cause sufficient to obtain a warrant to search a cell phone. I cannot, however, conclude that it is appropriate for this Court to apply *Riley* to permit warrants based primarily on an officer's training and expertise

9

without the necessary facts to support a reasonable inference that the suspect has used his phone in the commission of a crime or that the phone contains evidence of the crime.

Judge Greene has authorized me to state that he joins this Concurring Opinion.